# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **AZAADJEET SINGH,** ) | CASE NO. 1:15-cv-02240-DAP |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **SINGAPORE HOUSING &** ) | |
| **DEVELOPMENT BOARD,** ) | |
| ) | |
| Defendant. ) | |

## I. Background

Plaintiff Azaadjeet Singh, *pro se*, filed the above-captioned case on November 2, 2015, against Defendant Singapore Housing & Development Board ("HDB"). Doc #: 1. On December 11, after reviewing the Complaint, the Court directed Singh to amend his complaint to properly allege personal jurisdiction and set forth a cognizable claim for relief. Doc #: 3.

On January 8, 2016, Singh filed his Amended Complaint. Doc #: 5. In the Amended Complaint, Singh alleges, "On December 1, 1997, Azaadjeet Singh [buyer] and Housing & Development Board [HDB] [seller] entered into a written agreement . . . for the purchase of the

apartment Block 403 Bukit Batok West Avenue 7 #02-24 Singapore 650403. . . . On or about in 2005, HDB breached the said agreement by compulsorily acquisition of the apartment." Am. Compl. ¶ 11 (brackets in original).

Two months later, on March 9, 2016, the Court noted that nothing had been filed since January and directed Singh to file either proof of service compliant with 28 U.S.C. § 1608 or a status report regarding service of process. Doc #: 6. On March 31, 2016, Singh filed a Status Report describing his attempts to serve HDB. Doc #: 7. On April 7, 2016, the Court issued a follow-up, non-document order requesting or proof of service or another status report, by June 7, 2017.

On May 19, 2016, Singh filed a second Status Report. Doc #: 8. The Court observed, "[t]he Status Report describes and documents Singh's attempts to serve HDB and also appears to move the Court for default judgment." Order 1, Doc #: 9. The Court denied the motion for default judgment and directed Singh to file proof of service and a "a separate memorandum demonstrating that such service is legally effective upon a foreign entity, pursuant to Fed. R. Civ P. 4(j), 28 U.S.C. § 1608, and other relevant rules." *Id.* 2. Singh did so on July 5, 2016. Doc ##: 10, 11.

After five more months' docket silence, the Court issued an order finding service of process on HDB effective as of April 7, 2016, and instructing the Clerk of Court to enter default against HDB. Order 5, Doc #: 12. The Court directed Singh to " file, on or before February 13, 2017, a proper motion for default judgment, pursuant to Fed. R. Civ. P. 55(b). To afford HDB an opportunity to object to the Clerk's entry of default, the Court will not, prior to February 13, 2017, rule on any motion for default judgment." *Id.*

On February 10, 2017, Singh filed a Motion for Default Judgment. Doc #: 14. On February 13, HDB sent a letter to Court requesting additional time to oppose the Motion for Default Judgment. Doc #: 15. On February 14, 2017, by non-document order, the Court granted the extension until March 13, 2017. On February 21, Singh filed a Motion to Oppose Extension of Time. Doc #: 16. The Court scheduled a teleconference for February 24, 2017.

During the teleconference, the Court denied the Motion for Default Judgment, because HDB had appeared. Teleconference Minutes, Doc #: 20. The Court directed the parties to exchange certain documents related to the transfer of the apartment and scheduled a follow-up teleconference, noting explicitly that through this participation, "HDB is not waiving any jurisdictional defenses." *Id.* 2. HDB's counsel, but not Signh, attended the follow-up teleconference on March 14, 2017, at which the Court set a briefing schedule for HDB's responsive pleading.

On April 10, 2017, HDB filed a Motion to Dismiss Pursuant to FRCP 12(b)(1), (2), and under the Doctrine of *Forum non Conveniens*. Doc #: 23. This Motion is now fully briefed.[1]

**II. Legal Standard**

Pursuant to the Federal Rules of Civil Procedure, a court may dismiss claims filed in a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Watson v. Cartee*, 817 F.3d 299, 302–03 (6th Cir. 2016). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater*

---

[1] Singh's opposition brief appears to be missing paragraphs eleven through sixteen. Opp. 2–3, Doc #: 24.

*Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir.1986)).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally fall under one of two categories: facial attacks or factual attacks. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A facial attack tests the sufficiency of the pleading. *Id.* When reviewing a facial attack, the court must take the material allegations of the pleading as true and construe them in the light most favorable to the non-moving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In contrast, a factual attack is a challenge to the factual existence of subject matter jurisdiction. *Ohio Nat'l*, 922 F.2d at 325. If a Rule 12(b)(1) motion makes a factual attack, a court is free to consider and weigh extrinsic evidence of its own jurisdiction, without granting the plaintiff's allegations any presumption of truthfulness, until the court is satisfied of the existence of its power to hear the case. *Id.*

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.2004)). However, pro se plaintiffs must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989).

### III. Discussion

HDB moves to dismiss for three reasons: lack of subject matter jurisdiction, lack of personal jurisdiction, and *forum non conveniens*.[2] Each of these arguments raises a

---

[2] Translated literally: "an unsuitable court." *Forum Non Conveniens*, *Black's Law Dictionary* (10th ed. 2014).

separate—and typically independent—requirement for the Court to consider a case. For example, it is possible that a court may have subject matter jurisdiction but lack of personal jurisdiction and consequently be required to dismiss the case; or a court may have subject matter and personal jurisdiction but dismiss on the basis of *forum non conveniens*. Put another way, the failure to meet any one of these requirements results in dismissal no matter how strongly or weakly one or two of the other requirements may be met. Accordingly, because the above-captioned case is subject to dismissal on the basis of subject matter jurisdiction, the Court need not and does not address personal jurisdiction or *forum non conveniens*.

### A. Subject Matter Jurisdiction Law

The Foreign Sovereign Immunities Act ("FSIA"), "is the 'sole basis for obtaining jurisdiction over a foreign sovereign state in federal court.'" *Samantar v. Yousuf*, 560 U.S. 305, 314 (2010) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989)).

The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" except as otherwise provided. 28 U.S.C. § 1604. "Foreign state," for purposes of the FSIA, is defined in 28 U.S.C. § 1603. In relevant part, a foreign state "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). An agency or instrumentality is defined as any entity

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

*Id.* at (b)(1)–(3). In sum, if an entity is considered an agency or instrumentality, it will be immune from suit unless an exception applies.

Section 1605 of the FSIA provides exceptions to foreign state immunity. *See* 28 U.S.C. § 1605. Subsections (a)(2) and (a)(3), specifically, are of relevance in this case. Subsection (a)(2) is the "commercial activity" exception, which will strip immunity in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*Id*. at (a)(2). When determining whether certain activity is commercial, a court must first ask "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *O' Bryan v. Holy See*, 556 F.3d 361, 378–79 (6th Cir. 2009) (quoting *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)). Second, courts must "ascertain the claim's gravamen to determine whether the FSIA plaintiff is simply using creative nomenclature as a semantic ploy to shroud the true essence of its theory and obtain jurisdiction over a claim that Congress did not intend to be brought against a foreign sovereign." *Id.* at 380 (internal citation and quotation marks omitted). When dealing with a failure to pay, the question in a "direct effect" inquiry is whether the foreign defendant had an obligation to pay the money in the United States. *Westfield v. Federal Republic of Germany*, 633 F.3d 409, 416 (6th Cir. 2011). The Sixth Circuit has stated

that failure to receive funds only payable in a foreign country is not a direct effect in the U.S. even if the entity owed the money intended to transfer that money to the United States. *Id.*

Section 1605(a)(3) sets out the "takings exception" to foreign sovereign immunity. The takings exception strips immunity in any case

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3). A domestic taking—whereby a foreign state takes property from its own national on its own soil—cannot violate international law. *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 674 (7th Cir. 2012); *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 545–50 (11th Cir. 2015). The "nexus requirement" of the takings exception requires one of two things. Under the first clause, property must be present in the United States (clearly not at issue here). Alternatively, for the second clause of the takings exception to apply, the property, or funds derived from the sale of it, must be currently owned or operated by the agency or instrumentality, and the defendant must be engaged in a commercial activity in the United States. *Abelesz*, 692 F.3d at 686 (citing 28 U.S.C. § 1605(a)(3)).

### B. Agent or Instrumentality

Here, the Amended Complaint alleges, "HDB Corporation Private Limited is an 'agency or instrumentality' of the Government of Singapore." ¶ 3. HDB does not dispute this conclusion. Mot. to Dismiss 7. Therefore, for the purpose of this Motion, HDB is immune from suit in United States courts unless an exception applies.

**C. Takings Exception**

**1. International Law**

Singh's complaint alleges that HDB compulsorily acquired his apartment. Am. Compl. ¶ 11. Thus, the most plausible exception to consider is the takings exception.[3] Singh, in fact, asserts this as a basis of jurisdiction in his Amended Complaint. Am. Compl. ¶ 9. However, this exception does not apply.

According to the Amended Complaint, Singh purchased the apartment at issue in 1997. Am. Compl. ¶ 11. Singh's apartment was compulsorily acquired by HDB in 2005. *Id.* ¶ 5. Singh was a citizen of Singapore but relocated to the United States in 2001, renounced his Singapore citizenship in 2011, and is presently a United States citizen. *See* Request for Assistance to Senator Sherrod Brown, Soh Yen Decl. Ex. 11, Doc #: 23-1; *see also* Am. Compl. ¶¶ 1, 7; Opp. ¶ 21.

Singh does not dispute that he was a Citizen of Singapore in 2005, when the compulsory acquisition in Singapore occurred. Because the HDB, an agent or instrumentality of the Government of Singapore, took property from a Singapore citizen, international law is not implicated. *See De Sanchez v. Banco Cent. De Nicaragua*, 770 F.2d 1385, 1395 (5th Cir. 1985) ("[I]nternational law delineates minimum standards for the protection only of aliens; it does not purport to interfere with the relations between a nation and its own citizens."). For this reason, the takings exception does not apply.

---

[3] *See generally*, *Taking*, *Black's Law Dictionary* (10th ed. 2014) (defining a physical or actual taking as "physical appropriation of an owner's property by an entity clothed with eminent-domain authority.").

### 2. Jurisdictional Nexus

Furthermore, although the Court need not address the second prong of the takings exception, the Court notes there is no jurisdictional nexus. Because there can be no serious dispute that the apartment at issue is not located in the United States, in order to establish a nexus Singh must demonstrate HDB is "engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3).

Singh fails to do so. The Amended Complaint is silent as to HDB's commercial activity in the United States, although the Amended Complaint does allege that "HDB is owned by Temasek Holdings Private Limited and in return, Temasek Holdings Private Limited has a subsidiary in the United States, namely, Temasek International [USA] LLC which conducts commercial activities in the United States." Am. Compl. ¶ 9 (brackets in original); *accord* Opp. ¶ 25. HDB disputes the allegation that HDB is owned by Temasek Holdings, but there is no dispute that Temasek Holdings, Temasek International, and HDB are three separate entities. Assuming, *arguendo*, that Singh's description of the corporate relationships is true, these relationships must overcome FSIA's intention that "duly created instrumentalities of a foreign state are to be accorded a presumption of independent status." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627–28, (1983) (discussing "the presumption that a foreign government's determination that its instrumentality is to be accorded separate legal status"). However, beyond alleging that two otherwise separate entities share a parent company, Singh offers no reason that the alleged activities of one subsidiary (Temasek International) should be imputed to a separate subsidiary (HDB) for the purpose of subject matter jurisdiction. For this reason, also, the takings exception does not apply.

### D. Commercial Activity Exception

#### 1. Commercial Nature

Application of the commercial activity exception in this case is far more tenuous than the application of the takings exception. The Court must determine "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). Singh's complaints describes how HDB sold to him an apartment and then breached that agreement "by compulsorily acquisition [sic] of the apartment." Am. Compl. ¶ 11. This argument requires critical evaluation, as "courts must 'avoid the artful pleading of plaintiffs and look to the core of the activities alleged to be commercial in nature.'" *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 389 (6th Cir. 2016).

In *Beg v. Islamic Republic of Pakistan*, the Eleventh Circuit examined a situation very similar to the one before this Court and held that the Pakistani government's expropriation of property and failure to pay for that expropriation involved the sovereign power of eminent domain and was thus not commercial in nature. 353 F.3d 1323, 1326–27 (11th Cir. 2003), *cited in Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 389–90 (6th Cir. 2016). In that case, "Beg alleg[ed] that he owned eleven and one-half acres in the Punjab region of Pakistan valued at $10 million, which were expropriated from him by the Pakistani government. Beg state[d] that the property was then used for military housing or otherwise transferred to members of the military." *Id.* at 1324. The court noted,

> Confiscation of real property is a public act because private actors are not allowed to engage in "takings" in the manner that governments are. . . .

> Beg contends that the Punjabi regional government's agreement to compensate him is the equivalent of a contract and, therefore, is commercial activity. This analogy is not persuasive. First, as the Supreme Court made clear in *Weltover*, the dispositive issue in determining whether an activity is commercial is whether private actors could undertake this type of activity in a market. *See Weltover*, 504 U.S. at 614, 112 S.Ct. 2160. Expropriation is neither the type of activity in which private actors engage nor is it a market transaction. *See Carmack*, 329 U.S. at 236–37, 67 S.Ct. 252. Second, the FSIA has a separate exception for certain foreign government expropriations, further indicating that a foreign government's use of its eminent domain power is not commercial activity.

*Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1326–28 (11th Cir. 2003).

The Court finds this reasoning persuasive. *See Westfield v. Fed. Republic of Germany*, No. CIV.A. 3:09-0204, 2009 WL 2356554, at *5–7 (M.D. Tenn. July 28, 2009) (discussing the application of the commercial activity exception in takings situations). Here, Singh complains of a compulsory acquisition—a taking, in effect, or an expropriation. That the HDB may have sold the property for profit later, Am. Compl. ¶ 6, does not change the *nature* of the act of acquisition. Such taking of property is within the exclusive domain of government—not private or commercial—actors. For this reason, the commercial activity exception does not apply.

### 2. Direct Effect

Having decided the matter is not a commercial activity, the Court need not address the "direct effect" requirement, but the Court notes this requirement also precludes jurisdiction.

Singh alleges a direct effect, stating "[t]he HDB caseworker had informed me that after the re-sale of my apartment, the money I receive will be returned to me through my CPFB savings account and I could direct CPFB to pay me the money in the United States." Compl. ¶ 7. However, Singh acknowledges, correctly, that "mere financial loss to an American individual or corporation without more is insufficient to establish the nexus." Opp. ¶ 20; *see Westfield*, 633

F.3d 409, 416 ("[I]f the funds are only payable in a foreign country, failure to receive those funds does not cause direct effects in the United States. This is true even where the entity that was not paid alleges that it intended to transfer the funds to the United States on receipt. When funds are due abroad and not paid, the direct effects occur abroad."). Singh was to paid into his Singapore-based retirement fund which he indicated he intended to withdraw in the United States. *Westfield* is clear and controlling: this is not a sufficient direct effect.

Singh's reliance on *Farhang v. Indian Inst. of Tech.* to reach a contrary "direct effect" conclusion, Opp. ¶ 22, is misplaced. No. C 08 02658 RMW, 2012 WL 113739 (N.D. Cal. Jan. 12, 2012), *vacated in part sub nom. Farhang v. Indian Inst. of Tech., Kharagpur*, 529 F. App'x 812 (9th Cir. 2013). In *Farhang*, a district court did in fact hold "that the 'commercial activity' exception to the FSIA applied because the commercial acts at issue had a 'direct effect in the United States,'" but the district court was reversed by the Ninth Circuit Court of Appeals which held that "[t]he non-payment of profits to plaintiffs is 'merely an indirect effect' of the Society's alleged breach and is not the 'legally significant' act that gave rise to plaintiffs' claims for breach of the joint venture agreement and misappropriation of trade secrets. Thus, the purported loss of profits in California is not a 'direct effect' for the purposes of the FSIA." *Farhang v. Indian Inst. of Tech., Kharagpur*, 529 F. App'x 812, 813 (9th Cir. 2013). *Farhang* does not offer relief from *Westfield*, 633 F.3d at 416; there is no "direct effect," and for this reason also the commercial activity exception does not apply.

**E. Singapore Free Trade Agreement**

FSIA "is ***the sole basis*** for obtaining jurisdiction over a foreign sovereign state in federal court.'" *Samantar*, 560 U.S. at 314 (emphasis added). The Singapore Free Trade Agreement

does not provide for subject matter jurisdiction.

### F. Personal Jurisdiction and Forum Non Conveniens

As the Court lacks subject matter jurisdiction, the Court declines to address HDB's second and third arguments in favor of dismissal.

## IV. Conclusion

"Our courts have understood, as international law itself understands, foreign nation states to be independent sovereign entities. To grant those sovereign entities an immunity from suit in our courts both recognizes the absolute independence of every sovereign authority and helps to induc[e] each nation state, as a matter of international comity, to respect the independence and dignity of every other, including our own." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co*., 137 S. Ct. 1312, 1319 (2017) (alteration in original) (internal quotation marks omitted).

Invoking an old legal maxim, *ubi jus, ibi remediu*, another district court observed,

> Taking the allegations of the Complaint as true, as the Court must do at this stage of the pleadings, the equities are with the Plaintiffs and call to mind the legal maxim that where there is a right, there should be a remedy. However, this Court does not have jurisdiction 'however monstrous' the alleged conduct and Plaintiffs must seek any remedy in a forum other than the Federal courts of the United States.

*Westfield*, 2009 WL 2356554, at *7.

Here, the Court takes no position on whether Singh has a meritorious claim related to the alleged taking of his property, concluding only that Singh does not have claim he may pursue *in this Court*. The record does not indicate that Singh has pursued his claims in any Singapore court, nor whether such a venue court has been or will be a fair venue in which he may adjudicate

his claims. But it is not for this or United States courts to meddle in Singapore's domestic affairs in this matter any more than we would expect Singaporean courts to meddle in domestic matters here.

For the reasons stated herein, Motion to Dismiss, Doc #: 23, is GRANTED and the above-captioned case is dismissed without prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED.

*/s/ Dan A. Polster     June 1, 2017*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**